# WITHDRAWN



## Office of the Attorney General
### State of Texas

DAN MORALES
ATTORNEY GENERAL

May 3, 1995

Mr. Todd K. Brown
Executive Director
Texas Workers' Compensation Commission
4000 South IH-35
Austin, Texas 78704-7491

Opinion No. DM-346

Re: Whether article V, section 53 of the 1993 General Appropriations Act authorizes the Texas Workers' Compensation Commission to obtain liability insurance for its employees and whether the purchase of director's and officer's liability insurance by a state agency as authorized by that provision constitutes a waiver of the state's sovereign immunity (RQ-770)

Dear Mr. Brown:

You ask whether the Texas Workers' Compensation Commission (the "commission") is authorized to obtain liability insurance for its employees. The Texas Tort Claims Act, chapter 101 of the Civil Practice and Remedies Code, governs the tort liability of state agencies and political subdivisions of the state. Section 101.027 of the Civil Practice and Remedies Code provides as follows:

> (a) Each governmental unit may purchase insurance policies protecting the unit and the unit's employees[1] against claims under this chapter.

> (b) The policies may relinquish to the insurer the right to investigate, defend, compromise, and settle any claim under this chapter to which the insurance coverage extends.

---

[1]The term "employee" for purposes of the Texas Tort Claims Act means "a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority." Civ. Prac. & Rem. Code § 101.001(1). Because the members of the Texas Workers' Compensation Commission are entitled to reimbursement for actual necessary expenses and actual lost wages due to attendance at commission meetings, *see* Labor Code § 402.011, they are "in the paid service" of the department and are therefore "employees" for purposes of section 101.027 of the Civil Practice and Remedies Code.

> (c) This state or a political subdivision of the state may not require an employee to purchase liability insurance as a condition of employment if the state or the political subdivision is insured by a liability insurance policy. [Footnote added.]

Article V, section 53 of the 1993 General Appropriations Act, Act of May 27, 1993, 73d Leg., R.S., ch. 1051, art. V, § 53, 1993 Tex. Sess. Law Serv. 4463, 5363, provides in pertinent part as follows:

> Sec. 53. **Tort Claims Act.** None of the funds appropriated in this Act may be expended for the purpose of purchasing policies of insurance covering claims arising under the Texas Tort Claims Act. Notwithstanding the foregoing, state agencies may purchase director's or officer's liability insurance with appropriated funds for the agency's appointed commission or board members and executive management staff.[2] [Footnote added.]

We understand that insurance companies have offered full coverage for all commission employees at no additional cost over the costs for coverage of the commission members[3] and executive management. You ask, "if such additional coverage can be obtained at no additional costs to the state, is it permitted by the scope of Section 53."

Section 53 prohibits the use of appropriated funds for the purchase of liability insurance covering claims under the Texas Tort Claims Act and permits the use of appropriated funds for the purchase of director's and officer's liability insurance. That section 53 prohibits the use of appropriated funds for the purchase of liability insurance covering claims arising under the Texas Tort Claims Act for employees does not by implication permit the department to obtain such insurance for its employees at no cost. We believe, however, that section 101.027 of the Civil Practice and Remedies Code authorizes the department to obtain such insurance. Subsection (a) of that provision authorizes the department to *purchase* liability insurance covering claims under the Texas Tort Claims Act for its employees. We see no reason why that authority would not include the authority to obtain such liability insurance for employees at no cost. We

---

[2]We note that in the past, appropriations acts contained provisions similar to section 53 that included the first sentence of section 53 but not the second. This office repeatedly concluded that these provisions precluded state agencies from using appropriated funds to purchase any liability insurance under the Texas Tort Claims Act. *See, e.g.,* Attorney General Opinions JM-889 (1988), JM-625 (1987), JM-551 (1986), H-900 (1976), M-1215 (1972). The second sentence of section 53 first appeared in the 1993 General Appropriations Act. *See infra* p. 5.

[3]The commission members are appointed by the governor. *See* Labor Code § 402.001(a).

caution, however, that the determination whether such liability coverage is actually obtained for employees at no cost would involve the resolution of factual issues and is therefore beyond the purview of the opinion process.

You also ask what level of management within the commission is insurable as "executive management staff" as that term is used in section 53. Section 53 permits the purchase of "director's or *officer's* liability insurance with appropriated funds for the agency's appointed commission or board members and *executive management staff*." (Emphasis added.) The term "officer" in section 53 is taken from the private sector where the purchase of director's and officer's liability insurance is a common corporate practice. We do not believe it is used in its usual, narrow, public-sector sense, that is, a person upon whom the legislature has devolved a sovereign function of the government to be exercised by the officer for the benefit of the public largely independent of the control of others. *See Aldine Indep. Sch. Dist. v. Standley*, 280 S.W.2d 578, 583 (Tex. 1955). Rather, we believe that the term "officer," when taken together with the term "executive management staff," is intended to refer to those who would be considered executive officers of the department in the corporate sense, which is somewhat broader in scope. *Cf. Holm v. Mutual Serv. Casualty Ins. Co.*, 261 N.W.2d 598, 600 (Minn. 1977) (using cases in the context of insurance policies covering private corporations by analogy to construe the term "executive officer" in general liability policy issued to municipality); *see also infra* note 4.

The more recent cases we have found that discuss whether a particular person is an executive officer of a corporation for purposes of liability insurance coverage consider such factors as the person's connection with top officers of the corporation, the person's authority outside of his or her department, whether the person has a large number of employees under his or her control, the person's authority to hire and fire, the person's authority to help shape corporate policy, and the person's authority to make contracts on behalf of the corporation. *See, e.g., Diamond Intern. Corp. v. Allstate Ins. Co.*, 712 F.2d 1498, 1503 (1st Cir. 1983); *Vega v. Southern Scrap Material Co.*, 517 F.2d 254, 258 (5th Cir. 1975); *Industrial Indem. Co. v. Duwe*, 707 P.2d 96, 100 (Or. App. 1985); *Greene v. Wright*, 365 So.2d 551, 558 (La. App. 1978). *See generally* Joseph B. Conder, *Who is An Executive Officer of Insured Within Meaning of Liability Insurance Policy*, 1 A.L.R.5th 139-40 (1992). Although we have not found any Texas cases construing the term "executive officer" in an insurance policy, we believe a Texas court would follow these more recent cases in construing the term. Moreover, we believe that these factors reflect the legislature's intent in using the terms "officer" and "executive management staff" together in section 53.[4]

---

[4]In *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598, 601 (Minn. 1977), the court limited the term "executive officer" in the context of a general liability policy issued to a

Section 402.063 of the Labor Code authorizes the commission to appoint an executive director who "is the executive officer and administrative head of the commission. The executive director exercises all rights, powers, and duties imposed or conferred by law on the commission, except . . . [those] specifically reserved . . . to members of the commission [and] serves at the pleasure of the commission." Labor Code § 402.041; *see also id.* § 402.004(b) (voting requirements for decisions regarding employment of executive director). The executive director conducts "the day-to-day operations of the commission in accordance with policies established by the commission and otherwise implement[s] commission policy." *Id.* § 402.042(a). In addition, the executive director appoints division directors who serve at his or her pleasure. *Id.* § 402.021. Thus, at the very minimum, the executive director is "executive management staff" for purposes of director's and officer's liability insurance. Whether other positions are included in the term "executive management staff" according to the factors described above involves issues of fact and must be determined on a case-by-case basis.[5] *See also supra* note 4.

You also ask whether the purchase of director's and officer's liability insurance by a state agency as authorized by section 53 constitutes a waiver of the state's sovereign immunity. The Texas Tort Claims Act provides for limited governmental liability, and waives sovereign immunity to suit to the extent of that liability. *See* Civ. Prac. & Rem. Code §§ 101.021, .025. "To the extent an employee has individual immunity from a tort claim for damages," it is not affected by the Texas Tort Claims Act. *Id.* § 101.026. Paid board and commission members are "employees" for purposes of the Texas Tort Claims Act. *See supra* note 1. In essence, you ask whether section 53 constitutes a waiver of the state's sovereign immunity to any greater extent than the waiver in the Texas Tort Claims Act. We believe it does not for the following reasons.

---

(footnote continued)
municipality to cover only those persons "whose position, power, and duties are established in the municipal charter." We decline to construe the appropriations act provision to authorize the purchase of liability insurance only for those department employees whose position, power, and duties are established pursuant to state law. Most state agencies have only one or at most two positions set forth by statute. Section 53 uses the term "executive management staff." The use of the term *staff* suggests that the legislature intended to authorize state agencies to purchase liability insurance for more than one or two positions.

[5]For example, section 402.021 of Labor Code requires the executive director to appoint "directors of the divisions of the commission" and provides that they "serve at the pleasure of the executive director." Although the directors listed in section 402.021 are clearly at-will employees, we do not believe that their at-will status is dispositive in determining whether they are "executive management staff" for purposes of the appropriations act provision. Rather, whether such employees are "executive management staff" will depend upon the factors set forth above.

We believe that the second sentence of section 53 refers only to director's and officer's liability insurance covering claims arising under the Texas Tort Claims Act. This language was offered as an amendment to the appropriations act by Representative Alexander on the House floor during second reading. *See* H.J. of Tex., 73d Leg., at 1142-43 (1993). Representative Alexander did not explain the purpose of the amendment, and we are not aware of any other legislative history. Therefore, we construe the language on its face and in its statutory context. As noted above, section 101.027 of the Texas Tort Claims Act provides that each governmental unit may purchase insurance policies protecting its employees, including its officers and directors, against claims under the act. For many years, section 53 and its counterparts in previous appropriations acts, *see supra* note 2, effectively prohibited state agencies from doing so, at least with appropriated funds.[6] The newly added second sentence of section 53 appears to have been intended to eliminate this obstacle with respect to director's and officer's liability insurance. It does not appear to be intended to authorize state agencies to obtain insurance to cover suits against directors and officers arising under the common law or statutes other than the Texas Tort Claims Act.

Were we to conclude otherwise, the second sentence of section 53 could run afoul of the Texas Constitution. Article III, section 35 of the Texas Constitution prohibits the enactment of general legislation in a general appropriations bill. *See Moore v. Sheppard*, 192 S.W.2d 559, 561 (Tex. 1946); Attorney General Opinions DM-93 (1992), DM-81 (1992), JM-1151 (1990), MW-389 (1981), MW-51 (1979), V-1254 (1951), V-1253 (1951). A rider to a general appropriations bill may do no more than "detail, limit, or restrict the use of the [appropriated] funds or otherwise insure that the money is spent for the required activity for which it is therein appropriated." Attorney General Opinion V-1254 (1951) at 17 (quoting summary).

Specific statutory authority is necessary to authorize state agencies to purchase liability insurance.[7] Attorney General Opinions JM-625 (1987), H-1318 (1978). The second sentence of section 53 would be constitutionally infirm if it were construed to authorize state agencies to obtain insurance to cover suits against directors and officers arising under the common law or statutes other than the Texas Tort Claims Act, to the extent such authority does not exist under general law. Although we realize there is some question as to the utility of director's and officer's insurance for claims arising under the

---

[6]*See* Attorney General Opinions JM-889 (1988), JM-625 (1987), JM-551 (1986), H-900 (1976), M-1215 (1972).

[7]For statutes authorizing state agencies to purchase liability insurance, *see* Civil Practice and Remedies Code section 101.027 and Government Code section 612.002.

Texas Tort Claims Act,[8] we cannot conclude that the legislature intended impermissibly to enact general law authorizing the purchase of broader insurance coverage in the appropriations act. *See* Gov't Code § 311.021(1) (it is presumed that in enacting a statute the legislature intended compliance with the constitution). We also note that if the second sentence of section 53 were construed to authorize state agencies to purchase director's and officer's insurance for claims arising under other statutes and the common law, we would have to carefully consider whether such coverage would run afoul of article III, section 51 of the Texas Constitution. *See* Tex. Const. art. III, § 51 (legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual); Attorney General Opinion H-70 (1973) at 5-6 (where there is no risk of governmental liability, to provide insurance funds to discharge the liability of an individual school district trustee would be a grant of public money or aid of an individual in violation of article III, sections 51 and 52 of the Texas Constitution).

For the foregoing reasons, we conclude that the second sentence of section 53 authorizes state agencies to purchase director's and officer's liability only for claims arising under the Texas Tort Claims Act. Therefore, we also conclude that the second sentence of section 53 does not waive sovereign immunity to any greater extent than it is waived by the Texas Tort Claims Act.

---

[8]As noted above, the Texas Tort Claims Act does not waive individual immunity. *See* Civ. Prac. & Rem. Code § 101.026. A suit against a state employee or member of a state governing body in his or her personal capacity would not arise under the Texas Tort Claims Act. In addition, a state employee or member of a state governing body is entitled to indemnification in suits arising out of a broad range of official conduct. *See id.* ch. 104. If we are correct that the second sentence of section 53 refers only to director's and officer's liability insurance covering claims arising under the Texas Tort Claims Act, then it is difficult to imagine what sort of claims such insurance would cover.

## S U M M A R Y

Section 101.027 of the Civil Practice and Remedies Code authorizes the Texas Workers' Compensation Commission (the "commission") to obtain liability insurance against claims under the Texas Tort Claims Act for employees. Section 53 of article V of the 1993 General Appropriations Act precludes the commission from using any appropriated funds for the purchase of such insurance. Together these provisions authorize the commission to obtain liability insurance against claims under the Texas Tort Claims Act for employees at no cost. The determination whether liability coverage is actually obtained for employees at no cost would involve the resolution of factual issues.

The terms "officer" and "executive management staff" in section 53 refer to those persons who could be considered executive officers of the commission as that term is used in the private, corporate sector. The executive director of the department is "executive management staff" for purposes of director's and officer's liability insurance. Whether other positions are included in the term "executive management staff" must be determined on a case-by-case basis.

The second sentence of section 53, article V of the 1993 General Appropriations Act does not waive the state's sovereign immunity to any greater extent than it is waived by the Texas Tort Claims Act.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General